Good morning Your Honors, and may it please the Court, Fran Pratt on behalf of the Appellant Jermaine Wood. Could you either move the microphone closer to you or speak into it? Thank you. Fran Pratt Is that better, Your Honor? Jermaine Wood Yes. Fran Pratt I do have a problem with being soft spoken. Your Honors, when the District Court ruled on Mr. Wood's Section 404 motion in November of 2019, it did not have the benefit of the several decisions both from this Court and from the Supreme Court explaining what a court should do when deciding a Section 404 motion. This Court, however, must address and assess the District Court's ruling in light of those decisions. And after doing so, the Court should conclude that the District Court committed at least two procedural errors and vacate that Court's ruling and remand for further proceedings. I would like to address two, focus on two of the five issues that the Court had asked me to brief. The first one, which I think is the most significant procedural error, turns on what the District Court was required to do about Mr. Wood's request to recalculate his guideline range. We know from Concepcion that a District Court must consider a defendant's non-frivolous arguments about the application of a non-retroactive guideline to his case. Here we know that Mr. Wood specifically asked the Court to recalculate his guideline range by applying Guideline Amendment 684, a non-retroactive amendment that added second degree murder to the cross-reference for murder in the drug guideline. We further know from the District Court's ruling that it did not recalculate the range and instead relied on the First Step Act application worksheet, which the Court assumed was correct. And therefore, the Court assumed that the guideline range remained life imprisonment. Moreover, the Amendment 684 argument was not a frivolous argument for several reasons. First, the drug guideline calculation was based on first degree murder because at the time that Mr. Wood was sentenced in 1999, that was the only option that a Court had. Can I just ask you to back up for a second? Because in Concepcion, in footnote 8, we can all have a little geek out here, Justice Sotomayor says nothing requires a District Court to recalculate guidelines beyond applying the First Step Act. Now, I know she also says that you have to address and consider non-frivolous arguments and that non-retroactive guideline changes unrelated to the First Step Act fall into that category. So how do you think a Court meshes those two things? Because you just said the District Court had to recalculate and I'm not sure that that's really so because the District Court could say, I don't care about this non-retroactive guideline change because, as the District Court said here, what he did was so awful. You are correct, Your Honor, and I think was not as careful as I should have been. So applying only the Fair Sentencing Act to Mr. Wood's previously calculated guideline range, it would be that on count 1, which was the drug conspiracy count, that the statutory maximum would be reduced from 40 years down to 20 years. The statutory maximum on the 924J count would remain life, but critically, it was not mandatory life. And that was one error, I think a big error, in the First Step Act application worksheet, that it said that the guideline range for count 4 was a mandatory minimum. And so does that clarify? So after applying only the changes made by the Fair Sentencing Act, a Court must then at least consider whether or not to apply the guideline. And yes, absolutely, a Court may decide that it will not accept that argument, or even if it does accept the argument, it still would decline to reduce the previously imposed sentence. But here, I think there are non-frivolous reasons for the Court to have considered the argument. First of all, as I was starting to say, the drug calculation guideline was based on first degree murder, because that was the only option at the time. The guidelines were mandatory. It was near impossible to be able to go below what the range was. And so that's why in my briefs I put the word range in quotations, because life is life. Second, and I think this is significant, there is a lot of evidence to support that. The defense actually said that twice in his rulings on 2250 Cox. Yes, your Honor. Third, the firearms offenses could have been based on first degree murder, because that guideline did allow for it. It's cross-referenced to the most analogous murder guideline. But the probation officer applied second degree in keeping with the guidelines. And so, I think the government at the time did not object to that. Now, you would think that the government would want some consistency, that the guidelines on both counts would be essentially calculated the same way. Is that because it didn't really affect the ultimate sentence? In one sense, yes, but that did not prevent the government from noting an objection to the lack of any enhancement for obstruction of justice. The government certainly did make that objection, and then the district court said, well, that doesn't affect things. And I think had the government said, Judge Spencer, we ask that the offense level on the two firearms guidelines should be 43 via application of the first degree murder guideline, he, Judge Spencer, might well have accepted that. But the point is the government never objected on that basis. Okay. So, assuming we agree with you that the district court at least is obligated to consider the non-frivolous arguments that you have highlighted, is the government then free to go back and make the argument that really this is a first degree murder cross-reference, not second degree? Yes, I think that the government could in the same way that we would be able to, they could make that argument in response to our argument, but, you know, and then the court would have to decide which it is. But, you know, that didn't happen before. And the district court now should be given that opportunity in light of this recent case law. And while we're on the topic of what the district court might consider or not, so at this stage it appears that the counts are grouped, including count four, which is the weapons offense, and which seems to be inconsistent with our court's decision in Brand that suggests that when you're dealing with a weapons statute like this, that the grouping is not appropriate. I don't remember whether you all talked about that, but can the district court correct that and suggest that in fact that was a mistake and that count needs to be ungrouped from the others? Your Honor, I would believe no because Mr. Wood was sentenced in 1999, more than 15 years before this court decided Brand and I believe that application of Brand now to the case, where this is not a full brand new resentencing, where the slate starts clean, it is a sentencing modification. So I believe that application of Brand now would create an ex post facto problem. So we respectfully say that, you know, until the Supreme Court decides the Laura decision, perhaps, and even then after, even if the Supreme Court in Laura does say that a 924J sentence must be run consecutively, even then I think that there would be an ex post facto problem. And at the end of the day, if the court wants to retain a life sentence, I don't think it's going to matter whether it's consecutive or not. I'd like to turn briefly in what time I have left to the application worksheet issue. And, you know, let me mention, go back to that, because this is in the joint appendix at page 290, and you said that worksheet says that life is mandatory on count 4, right? That is my reading of it. And it says restricted guideline range, mandatory minimum life for count 4. That's what you're talking about? Yes. And there is no mandatory minimum. And there wasn't, I mean, there was, life was not the statutory mandatory sentence for count 4, right? That is correct. It has never been. It's always been, because the government alleged second degree murder in the 924J count, it was always a term of years or life. Okay. So turning to the application worksheet issue, in his pro se motion, Mr. Wood requested the opportunity to object to the pre-sentence report. That's at joint appendix page 49. And in his reply, he specifically requested that the court order a revised pre-sentence report incorporating changes in the law and the guidelines. That is at joint appendix page 175. In the courts, and there is no mention of the application worksheet in either the counseled motion that was filed on behalf of Mr. Wood, and I did not see any mention of the worksheet in the government's opposition. So for the very first time, Mr. Wood learns of the worksheet's existence in the district court's ruling when the district court expressly relies on the fact that the application worksheet indicates that the range has not changed. But again, as we've just discussed, I think the worksheet is wrong in saying that count 4 was subject to a mandatory minimum of life. And I think the worksheet could have been clearer that on count 1, the drug conspiracy count, that the range for that count would have been limited to the new statutory maximum of 20 years. So Mr. Wood objected to the pre-sentence, to the application worksheet at the first opportunity he had. And that's, you know, it was on a motion for reconsideration, but that was his first opportunity. And that was error. And for the same kind of reasons that we believe that he was harmed by the court's failure to consider his argument about the range, you know, the court should treat the range as 324 to 405 months, I think those same arguments apply also to the application worksheet issue. And I don't think it's completely unreasonable to think that the guidelines could be recalculated to or, you know, that the court would, in fact, consider the lower guideline range. So if the court has no further questions for me at this stage, I will reserve the remainder of my time. Thank you. Thank you, Ms. Pratt. Mr. Honnold? Good morning, Your Honors, and may it please the court. Daniel Honnold for the United States. This court should affirm because the district court did not abuse its discretion or otherwise err in any way in the way that it handled and ultimately denied Defendant's First Step Act motion. Turning to the salient points, the real salient factors at issue here, the nature and circumstances of the offense, the defendant's criminal history, the defendant's attempts at rehabilitation and education, his disciplinary record, those are the most salient and most important factors to the district court. And the district court thoroughly considered them and adequately explained its decision based on those factors. And there's nothing unreasonable or any abuse of discretion in the way that it considered those things. The claims of error here, the failure to consider this post-bifurcation murder cross-reference point, and it didn't come up in oral argument, but also the, no, excuse me, I'll get to that in a second, but just to go to that first point, that issue about the post-bifurcation murder cross-reference, 2D1.1 to 2A1.1, was not raised either in the counsel motion or in the opening motion. It wasn't raised, if at all, really, until the reply and my colleague doesn't really seem to dispute that fact. And we know from this court's case in Smalls that new arguments are not to be raised even in the de novo sentencing context for the first time in reply. But in Concepcion, in the Supreme Court case, in that case, it was arguments raised in a reply brief that they found the district court should have considered and they sent it back. So isn't that inconsistent with your argument? No, Your Honor, and if I could explain a little bit about the procedural history of Concepcion, I think you'll, you may understand why we're taking that position. So in Concepcion, the first thing that happens there is a pro se, essentially a pro forma motion from that applicant saying, look, I'm eligible for First Step Act relief, please reduce my sentence. Thereafter, an attorney gets involved, enters an appearance, and makes a request, leave from the court, leave from the court to file a reply brief and gets the assent of the government in doing so. And so the counsel then files what's styled as a reply, yes, and the Supreme Court describes it as such. But in effect, what it really is, is it's a supplement to the original motion containing, for the first time, any real semblance of argumentation on behalf of that applicant. What we have here is something totally different. And what we have is a counsel motion first and then a pro se motion filed by this defendant of his own accord. And so thereby having two full opportunities to make his arguments, explain why he was entitled to relief and why a sentence reduction was appropriate. And the other thing I'll say about Concepcion is that while the Supreme Court did describe these arguments being raised in a reply brief, it doesn't appear from the face of the opinion that the issue of issue presentment was squarely before the Supreme Court at that time. In other words, I wouldn't read Concepcion as saying a district court must, in all circumstances, address new arguments raised for the first time in reply. So are you arguing that that issue is waived? No, Your Honor. And as we explained, I believe it's in footnote four. We're not framing this as a waiver argument. We're framing this for the purposes of this case. There may be future cases in which we could argue this as a waiver. But for here, the purposes of this appeal, we're simply saying in terms of the district court's reasonableness in the way that it adjudicated this motion, you have to look at the arguments that defendant is now claiming on appeal weren't addressed in the context in which they were presented to the district court. And here they were presented, again, if at all, in reply and in a motion for reconsideration. The district court was not on notice that that argument needed to be addressed. And certainly didn't abuse its discretion in not more explicitly doing so. The other thing I'll say about the waiver... What do you say in not more explicitly doing so, but where in the order at all did the district court explain its reasoning as to that amendment? So again, it's not explicitly mentioned, but I think to the extent that there's support for it, it's in the denial of the motion for reconsideration, JA 262, in which the district court says, look, Mr. Wood... So it's not in the original order at all? No, Your Honor, I don't believe it's in the original order, but the denial of the motion for reconsideration, I think, can inform this court in the way that the district court was reasonable in how it adjudicated this motion. And what the district court says there is, Mr. Wood, I'm going to spot you, this procedural vehicle, and I'm going to basically treat this as a second bite at the apple of this motion, even though it's not clear to me, as the district court, that there is a procedural mechanism for reconsideration here. And I'm going to say, even still, you've presented no reason why I should reconsider and grant you the relief that you've requested. And if it's true, as counsel is claiming, that defendant actually raised this argument in the motion to reconsider, then I think we can interpret the order denying motion for reconsideration as having addressed that argument. But even... Well, I mean, he did raise it in that. I mean, he specifically refers to Amendment 684, right? Correct? Correct, Your Honor. But the way that he frames this argument, both in the reply and on the motion for reconsideration, are all grounded in apprendee issues. The argument, as best as I can read it and understand it, is not the way that it's presented here on appeal. The way it's presented here on appeal is, Your Honor, you should consider this non-retroactive amendment because were I sentenced, had that amendment existed at the time of my sentencing or were I to be resentenced today, I would get the second degree murder cross-reference based on the facts of my case. And that's just not how it was at all presented by the defendant to the district court. And so to fault the district court for not addressing that argument as it has been reformulated and refashioned here on appeal doesn't seem fair to the district court and certainly can't be considered an abuse of discretion to have not addressed that argument that didn't exist. And the way that he packaged it below is patently frivolous. There was no apprendee issue here. And as we know from Concepcion, a district court doesn't even have to address frivolous arguments. You're saying that the district court's order on the motion for reconsideration is the best place to look for identification that the district court actually considered this amendment argument? Yes, Your Honor. Where in the order? So I'm looking at JA 260 to 263. Correct, Your Honor. And so I referred, Your Honor, to JA 262 where the district court says no matter the procedural vehicle for the motion, Wood puts forth no reason why this court should change its prior order denying him first step act relief. And then it goes on to reiterate that it denied the sentence reduction in its discretion. And so when the court is saying it puts forth no reason, what the court is referring to are the reasons that the defendant put either in his reply brief or in the motion for reconsideration. It's essentially saying no persuasive reason. Yes. Because, and I respectfully disagree with my colleague, that that order was focused on the procedural finer points of whether a procedural mechanism exists for a motion for reconsideration. It's actually quite the opposite. The district court spots him, that procedural point, and then says, on the merits, there's nothing that would persuade me to go the other way that you've presented in your motion for reconsideration. And I want to turn to a slightly different but related point here, which is that even if this court were to agree with defendant that this issue were raised, that it was non-frivolous, and that the court should have addressed it, well, number one, Concepcion says that a district court doesn't need to explicitly address every single argument. It just needs to persuade a reviewing court and the parties that it had thoroughly considered all the arguments presented to it, all the non-frivolous arguments presented to it. And Concepcion also says that with the exception of errors in recalculating how the First Step Act affected a defendant's sentence, appellate review should not be overly searching. I think this is exactly what we're looking for here. When you look at what the district court actually looked at and what it actually cared about, those are the most important and most salient features of this case, and they are what properly drives the decision that the district court eventually comes to. But even still, if we were to go all the way down and spot all those arguments all the way down, there's no reasonable possibility of a different outcome had the district court explicitly addressed this murder cross-reference argument. And there are several reasons for that. Number one, going back to the Apprendi point, throughout defendants' pro se motions and even here on appeal, there's a conceptual misconstruction of how and by what mechanism these cross-references apply. The argument that the first-degree murder cross-reference wouldn't apply because the government indicted on and convicted of 924J predicated on a second-degree murder is not at all dispositive here. We know from the Davis case that which cross-reference should apply is based on the actual facts of the case and are proved by a preponderance of the evidence. So if we were to go under the state of current law and analyze this issue under current law, it's quite clear that the preponderance of the evidence indicates that what happened here was a first-degree murder. And as we spelled out in our brief, there's two different and independent theories of why what the defendant did constituted first-degree murder. First, there's the evidence of... But those weren't theories that were considered by the district court, right? So why shouldn't we let the district court consider that first instance? Well, for all the reasons I explained earlier, the district court wasn't required to go into any of this in any greater detail than it did. But even if... You're saying the district court's not required to make the defendant's arguments for him? Absolutely, Your Honor. Well, it's hard to disagree with that. But... I don't know if that's what happened here or not, but that's kind of where I'm trying to be sure I follow. No, and honestly, I think part of what's happening here is that we're pushing back using counter-arguments against an argument that wasn't even made in the district court. But even assuming it was, right, there has to be some sort of procedural error-harmlessness analysis that would take place here. And so this court can and should affirm, if we were to go all the way down this rabbit hole, on the basis that there's no reasonable probability that had the district court considered it, that the court would have agreed that the most appropriate cross-reference was to 2A1.2 instead of 2A1.1. That's why we lay out all the facts of what happened here. It's because this is so plainly a first-degree murder, even by defendant's own admission, that what he was doing was also committing a robbery while he was committing this drug-trafficking offense, on top of the ample evidence of premeditation by lying in wait, that this is a first-degree murder, either under the felony murder theory or under the premeditation, pre-deliberation theory of first-degree murder. And so you can make the argument, but if it's not going to make any difference and there's no reasonable way in which it would make a difference, there's no real need to remand here because the error would have been harmless. So turning to the second point, which did come up, and I apologize, was the argument about the FSA and its application and effect on the guidelines. The way that it was formulated in the briefs is that the district court erred by saying on page 215 of the JA that the First Step Act does not alter the U.S. sentencing guidelines range applicable to Wood. Here on an oral argument, the argument is slightly different. It was basically that the First Step Act worksheet was erroneous, and therefore the district court erred in citing to the First Step Act worksheet. It's kind of two sides of the same coin, but they are fundamentally flawed for a couple of reasons. First, the argument about the First Step Act and the district court's comments about the guidelines, as far as I'm aware, are not raised until page 5 of the reply brief, and so that would be waived. But even if not, it's not correct to say that the district court was wrong in how it assessed the guidelines range, and that's for a couple of reasons. As my friend acknowledges, in fact, there really was very minimal changes brought to the defendant's sentence by the First Step Act. The only plausible thing that could have changed was the statutory minimums and maximums applicable to count one. That's count one of three counts that were grouped together under the guidelines and that everyone agrees, at least on this side of the table, were properly grouped. You would agree that he's eligible on count one, and if the court wanted to, under the sentencing packaging doctrine, it could review all three sentences. I didn't hear it read any argument to the contrary on that point in your briefing. Yes, Your Honor, we're not pushing back on that point, and the reason why we're not, especially in the context of this case, is that there's no indication that the district court felt that it was constrained to not do that. It appears to us that the district court believed itself to have that authority and just declined to do so on the merits. And so that issue's not really squarely teed up here. The only real issues are whether the district court abused its discretion in denying on the merits, considering that it believed itself to have this broad authority. So it's kind of the reverse of conception where the district court erred by falsely thinking that it had limited authority to But I want to get back to this point about the district court. Judge Eagles brought up count one, and maybe you addressed this earlier, and I simply missed it. So in effect, what we have now is a 240-month variant sentence because of the First Sentencing Act modification to the statutory maximum. So why do you say that that's still okay? It's okay in the context of this case, where two very salient features are at play here. Number one, the ultimate sentence is life. It was life before the First Step Act and the Fair Sentencing Act. It's still life after that. These counts were sentenced concurrently. And so, you know, whatever happens with count one, it's going to have ultimately no impact because it's the 924J, count four, that's driving the total offense here. And so overall, the statutory maximums and minimums are not changing here. The statutory maximum is still life by virtue of the 924J that is grouped with and sentenced concurrently with counts one and counts three. Are you saying essentially that we'd be correcting a clerical error? I mean, he's still entitled to have the judgment reflect what the state of the law is, right? So that depends on whether Collington has been overruled by Concepcion. Yes, that is exactly what it depends on. And we've previously argued in a case called Reed that was argued in October that Concepcion has effectively abrogated those parts of Collington that Your Honor is referring to. Well, I'm not suggesting that the district court is bound to reduce the sentence. What I'm suggesting is that if he chooses not to, there's still a requirement, I would think, that would explain why. I think that's right. I think there is a requirement that a district court give a brief explanation of its reasons for either refusing to reduce a sentence or also in reducing a sentence. And here that's exactly what the district court did. The district court focused on the fact that the sentence is driven by the murder and the shooting and not the quantity or the type of drugs at issue here. So I think that is a fair and adequate explanation of why it would deny relief on count one, even though all parties agree that it was a covered offense. And so just to get back to that guidelines point, actually, really for the reasons I just explained, the fact that those counts all were, as a factual matter, grouped together and all were, as a factual matter, sentenced concurrently, it's not accurate to say that the court erred in saying that the FSA did not affect the sentence. In fact, they did not. The guidelines range is still life even after the FSA by virtue of the 924J count. And also it's just not really, you know, there are countless examples in the record, JA-44, JA-220, JA-287, of where people refer to the guidelines, even if we were to sort of engage with this argument that, well, really the guidelines were changed because by virtue of 5G 1.1, the restricted guidelines range is different for count one. That may be true as a technical legal matter. It's actually kind of an open question after pain whether it really even is. But would you say slow down? I'm sorry. It may be true as a technical legal matter that the change in the FSA changed the restricted guidelines range in count one by virtue of the application of 5G 1.1. But what the district court is really talking about is the offense level. When it's saying the First Step Act didn't change anything about the offense level, that's because the offense level is what mattered here. And the murder cross-references had nothing to do with and were completely unaffected by the First Step Act. I see I'm coming down to time here. We're happy to rest on our briefs with respect to the due process issue related to the providing of the First Step Act worksheet. I would just point the court to JA40, where the court in its order directs that that First Step Act worksheet be created and then sends a copy of that order indicating that that worksheet would be created to the defendant. The defendant was then represented by counsel for approximately two months after that First Step Act worksheet was entered on the docket. So it's not correct to say that the defense did not receive it. Maybe the defendant didn't personally receive it, but that's not the requirements of the law, especially at a time where at the time of the dissemination of that document, if I may just finish this brief point, at the time of the dissemination of that document, the defendant was represented by counsel and there is no contrary authority that's been presented by my friend to say that that was a violation of anybody's due process rights. And so with that, we would ask that this court affirm. Thank you, counsel. Ms. Pratt? Several points that I would like to make on rebuttal, please. First and foremost, again, the district court decided this case long before this court decided Chambers, Collington, Lancaster, before the Supreme Court decided Concepcion, and in some ways perhaps most recently, the Supreme Court decided the Swain case. And this court has sent back numerous cases, including at least three of my own, for reconsideration in light of the current law. We simply ask that the court do the same thing here, and particularly with the recognition that in Swain, the court said that the primary purpose of Section 404, or Congress's primary purpose, was to permit reconsideration of sentences. I was struck by your colleague's argument, though, that really this case is not primarily a drug case. It's really a murder case. And his point is, I mean, these facts are as bad as they get, and we're simply going to be going through the motions and nothing's going to change. To concur with that, the district court says this case is about what the defendant did and says it a couple of different times. So it does kind of seem like a useless act. Your Honor, I would disagree. There are any number of district courts around the country that have reduced sentences where a defendant has either directed a murder or personally committed a murder. And here, first of all, I want to make clear that the only reason that the guideline range turned out to be life on the 924J count was because it was the first-degree murder on the drug count. Otherwise, the guideline range on the 924J would have been for second-degree murder. And I would refer the court to the Tenth Circuit's very well-reasoned decision in the Price case. It's a August 2022 case that we cited in our reply brief, not for this proposition, but the facts, I think, are very similar. Second, in terms of the 3553A factors, and of course the court, the district court, and I'm sure this court will be concerned about Mr. Wood's criminal history, but there are a number of mitigating arguments that I could raise on remand. For example, that at the time this offense was committed, the only other conviction that Mr. Wood had was a 1994 DUI. The probation officer expressly stated on Joint Appendix page 273 that the conduct and the convictions listed in the pre-sentence report were the only, that he was not aware of any other criminal conduct, that the other entries in the pre-sentence report are simply allegations, the arrest record. And then finally, and perhaps most significantly, all of the violent conduct committed by Mr. Wood occurred between 1993 and 1998, when Mr. Wood was only between 19 and 23 years old, and before his, as research has shown, and as the Supreme Court has agreed, that was before his brain was fully formed. He's now 48, so all of that conduct was literally half his lifetime ago. And furthermore, he has at least one of the ACE factors, the Adverse Childhood Experience factors, in his background, in that he was sexually abused at a young age, and that, more likely than not, is why he started using drugs and alcohol at such a young age, and of course that's going to have an impact on his brain. So it's, I think, important to realize that today he's not going to be the same violent person that he was as a young man. And second, with regard to his rehabilitation, he has taken courses that specifically relate to things like the impact of his actions on the victims. And he's taken courses in anger and stress management. I think both of those have helped him to understand that what he did, you know, had a huge impact on his victims, his victims' families, and he's learned ways to better manage things like anger that could result in violent acts. And then just turning back to the 684 argument, it's, I think, important to understand that Mr. just as in Concepcion the defendant's motion was very pro forma, that's true in this case as well. I mean, at the time the motion, the counsel's motion was filed, this was all very early on in the whole process of analyzing and filing these kinds of motions, and it was a very bare bones motion. And more importantly, there is simply no acknowledgement by the district court that this argument was raised in the reply because, you know, for example, even to say, you know, the defendant raises this argument, but it's in the reply, so I'm not going to consider it. There's simply nothing there. I'm sorry. I'm trying to read my handwriting. Let's see. Okay. Well, I believe that I've asked that this court vacate the district court's ruling and remand for reconsideration in light of all these subsequent decisions that will fully inform the district court's ability to reconsider Mr. Woods' case. Thank you. Thank you, Ms. Pratt. Thanks to both counsel for their able arguments. We really appreciate your helping us with this case, and again, we'd come down and thank you personally, but hopefully someday in the future. But thanks again.
judges: Albert Diaz, Stephanie D. Thacker, Catherine C. Eagles